## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO. II) | MDL No. 6:20-2977-RJS-CMR<br><br>Hon. Chief Judge Robert J. Shelby<br><br>Hon. Cecilia M. Romero |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH KOCH

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................................1

II.     BACKGROUND ...................................................................................................................2

    A.     Procedural Background ................................................................................................2

    B.     The Settlement Negotiations and Settlement Agreement Terms .......................................4

    C.     Preliminary Approval and the Proposed Notice and Claims Process .............................6

    D.     Class Notice, Objections, and Exclusions ......................................................................7

    E.     The Proposed Allocation and Distribution to the Settlement Class ..................................9

    F.     Plaintiffs' Application for Attorneys' Fees and Litigation Costs.......................................9

III.    ARGUMENT .......................................................................................................................10

    A.     The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Finally
        Approved ....................................................................................................................10

        1.   Plaintiffs and Settlement Class Counsel Have Skillfully Represented the Settlement
           Class ....................................................................................................................10

        2.   The Settlement Was Reached After Arm's Length Negotiation................................11

        3.   The Relief Provided to the Settlement Class is More Than Adequate, it is
           Substantial ...........................................................................................................12

           a. The costs, risks, and delay of trial and appeal favor final approval .....................13

           b. The proposed method of distributing relief to the Settlement Class, including the
             method of processing claims, favors final approval .............................................14

           c.  The proposed award of attorneys' fees favors final approval ..............................16

        4.   The Settlement and Proposed Plan of Distribution Treat Members of the Settlement
           Class Equitably.....................................................................................................16

        5.   The Parties Agree that the Settlement Is Fair, Reasonable, and Adequate ...............17

    B.     Koch Provided the Notice Required by CAFA .............................................................18

    C.     Notice to the Settlement Class Comported with Rule 23 and Due Process ...................19

    D.     Final Judgment as to Koch Is Proper Under Rule 54(b) ................................................22

IV.     CONCLUSION ...................................................................................................................22

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado Partners, L.P. v. Mehta*,
    723 F. Supp. 540 (D. Colo. 1989)........................................................................14, 17

*Aragon v. Clear Water Prods. LLC*,
    No. 15-cv-02821, 2018 WL 6620724 (D. Colo. Dec. 18, 2018) ............................................12

*Blanco v. Xtreme Drilling & Coil Servs., Inc.*,
    No. 16-cv-249, 2020 WL 4041456 (D. Colo. July 17, 2020)................................................12

*In re Broiler Chicken Antitrust Litig.*,
    No. 16-cv-8637 (N.D. Ill.) ...........................................................................................4

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    No. 17-cv-2142, 2020 WL 3288059 (D. Kan. June 18, 2020) ...................................... *passim*

*Chieftain Royalty Co. v. XTO Energy Inc.*,
    No. 11-cv-29, 2018 WL 501656 (E.D. Okla. Jan. 18, 2018)................................................21

*Childs v. Unified Life Ins. Co.*,
    No. 10-cv-23, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011) ................................................14

*Cisneros v. EP Wrap-It Insulation, LLC*,
    No. 19-cv-500, 2021 WL 2953117 (D.N.M. July 14, 2021) ............................................11, 17

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...............................................................................17

*Colvin v. Tyson Foods, Inc., et al.*,
    No. 2:20-cv-2464 (D. Kan.)................................................................................................3

*Cook v. Rockwell Int'l Corp.*,
    No. 90-cv-181, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) ................................................16

*In re Corrugated Container Antitrust Litig.*,
    659 F.2d 1322 (5th Cir. 1981) ...........................................................................................14

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13-md-2476, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)...........................................18

*DeJulius v. New England Health Care Emps. Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ........................................................................................19, 20

*In re Dep't of Energy Stripper Well Exemption Litig.*,
    653 F. Supp. 108 (D. Kan. 1986) ........................................17

*In re Domestic Airline Travel Antitrust Litig.*,
    378 F. Supp. 3d 10 (D.D.C. 2019) ......................................13

*Gelboim v. Bank of America Corp.*,
    574 U.S. 405 (2015)......................................................22

*Haff Poultry, Inc., et al. v. Tyson Foods, Inc., et al.*,
    No. 6:17-cv-33 (E.D. Okla.) ...........................................3

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-cv-660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ................15

*Lawrence v. First Fin. Inv. Fund V, LLC*,
    No. 19-cv-174, 2021 WL 3809083 (D. Utah Aug. 26, 2021) (Shelby, J.) .......10, 22

*Lewis v. Wal-Mart Stores, Inc.*,
    No. 02-cv-0944, 2006 WL 3505851 (N.D. Okla. Dec. 4, 2006) ..............16

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-md-2420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) .............13

*Mason v. Tyson Foods, Inc., et al.*,
    No. 5:20-cv-07049 (N.D. Cal.) .........................................3

*McEntire v. Tyson Foods, Inc., et al.*,
    No. 1:20-cv-2764 (D. Colo.)...........................................3

*McGaffin v. Argos USA, LLC*,
    No. 16-cv-104, 2020 WL 3491609 (S.D. Ga. June 26, 2020) ...............11

*McNeely v. Nat'l Mobile Health Care, LLC*,
    No. 07-cv-933, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ...............11, 14, 17

*Miller v. Basic Rsch., LLC*,
    750 F.3d 1173 (10th Cir. 2014) ........................................22

*Montgomery v. Cont'l Intermodal Grp. Trucking LLC*,
    No. 19-cv-940, 2021 WL 1339305 (D.N.M. Apr. 9, 2021)..................10, 11

*Moreno v. Beacon Roofing Supply, Inc.*,
    No. 19-cv-185, 2020 WL 3960481 (S.D. Cal. July 13, 2020)................15

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020)...................................17

iii

*Perks v. Activehours, Inc.*,
No. 19-cv-5543, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............................................17

*In re Processed Egg Prod. Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012)............................................................................................13

*Retta v. Millennium Prods., Inc.*,
No. 15-cv-1801, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ............................................14

*In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
997 F.3d 1077 (10th Cir. 2021) ......................................................................................10, 12

*In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*,
No. 17-md-2792, 2019 WL 6118267 (W.D. Okla. Nov. 18, 2019)........................................22

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
No. 17-md-2792, 2020 WL 2616711 (W.D. Okla. May 22, 2020) ..................................20, 21

*In re Sanderson & Koch Broiler Chicken Grower Litig.*,
No. 7:18-cv-31 (E.D.N.C.)......................................................................................................3

*Shaw v. Interthinx, Inc.*,
No. 13-cv-01229, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ............................................16

*Stewart v. USA Tank Sales & Erection Co.*,
No. 12-cv-5136, 2014 WL 836212 (W.D. Mo. Mar. 4, 2014) ...............................................12

*Suaverdez v. Circle K Stores, Inc.*,
No. 20-cv-01035, 2021 WL 4947238 (D. Colo. June 28, 2021) ............................................10

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)...................................................................................................17

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018)....................................................................................16

*Tennille v. Western Union Co.*,
785 F.3d 422 (10th Cir. 2015) .........................................................................................20, 21

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
No. 02-md-1468, 2011 WL 1808038 (D. Kan. May 12, 2011) ..............................................16

*In re Urethane Antitrust Litig.*,
No. 04-md-1616, 2006 WL 2983047 (D. Kan. Oct. 17, 2006)...............................................13

*In re Urethane Antitrust Litig.*,
No. 04-md-1616, 2016 WL 4060156 (D. Kan. July 29, 2016)...............................................16

iv

*Vargas v. Ford Motor Co.*,
   No. 12-cv-8388, 2020 WL 1164066 (C.D. Cal. Mar. 5, 2020).........................................15, 16

*In re Vitamins Antitrust Litig.*,
   No. 99-cv-197, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ....................................................17

*Waltman v. Georgia-Pacific, LLC*,
   590 Fed. Appx. 799 (10th Cir. 2010).....................................................................................22

*Wilkerson v. Martin Marietta Corp.*,
   171 F.R.D. 273 (D. Colo. 1997) .............................................................................................14

**Statues**

28 U.S.C. § 1291................................................................................................................................22

28 U.S.C. § 1715(a)(1)(A) .................................................................................................................19

28 U.S.C. § 1715(b) ..............................................................................................................7, 18, 19

28 U.S.C. § 1711 ...........................................................................................................1, 7, 18, 22

Packers and Stockyards Act Section 202...........................................................................................2

Sherman Act Section 1 .......................................................................................................................2

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. passim

Fed. R. Civ. P. 23(a) .........................................................................................................................10

Fed. R. Civ. P. 23(b)(3)..........................................................................................................7, 19, 20

Fed. R. Civ. P. 23(c)(2).........................................................................................................1, 19, 21

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................19, 20, 21

Fed. R. Civ. P. 23(e) ...................................................................................................................10, 17

Fed. R. Civ. P. 23(e)(2)........................................................................................................1, 2, 10

Fed. R. Civ. P. 23(e)(2)(A)..........................................................................................................10, 11

Fed. R. Civ. P. 23(e)(2)(B) ...............................................................................................................11

Fed. R. Civ. P. 23(e)(2)(C) .........................................................................................................12, 13

Fed. R. Civ. P. 23(e)(2)(C)(i).............................................................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(ii)............................................................................14, 15

Fed. R. Civ. P. 23(e)(2)(C)(iv)...................................................................................12

Fed. R. Civ. P. 23(e)(2)(D) ..........................................................................................17

Fed. R. Civ. P. 30(b)(1)..................................................................................................4

Fed. R. Civ. P. 30(b)(6)...............................................................................................4, 5

Fed. R. Civ. P. 54(b) .................................................................................................1, 22

**Other Authorities**

U.S. Const. amend. V.......................................................................................................4

William B. Rubenstein, 4 Newberg on Class Actions (5th ed.) .......................10, 14, 15

## I.    INTRODUCTION

Plaintiffs,[1] on their own behalf and on behalf of the certified settlement class ("Settlement Class") for the settlement with Koch[2] (the "Settlement" or the "Settlement Agreement"), respectfully submit this motion and supporting memorandum for: (1) final approval of the Settlement under Federal Rule of Civil Procedure 23(e)(2);[3] (2) final approval of the proposed *pro rata* plan of distribution to members of the Settlement Class; (3) a finding that Koch has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA"); (4) a finding that the class notice program, as implemented, constituted the best notice practicable under the circumstances, comported with Federal Rule of Civil Procedure 23(c)(2) and due process and was effectuated in accordance with the Court-approved notice plan, and (5) a finding of no just reason for delay and entry of judgment under Federal Rule of Civil Procedure 54(b) as to Koch only in the MDL and its member cases.

Under the Settlement, Koch and/or the Koch Group has paid $15.5 million in cash to the Settlement Class (bringing the aggregate recoveries by Plaintiffs to over $51 million); is providing Plaintiffs with cooperation in connection with their claims against the remaining Defendants;[4] and, over the next five years, will exclude from its contracts with members of the Settlement Class provisions that mandate arbitration or bar initiation or participation in a class action and forego enforcement of any such provisions in existing contracts. As this Court

---

[1] The court appointed Haff Poultry, Inc., Nancy Butler, Johnny Upchurch, Jonathan Walters, Myles Weaver, Melissa Weaver, Marc McEntire, Karen McEntire, Mitchell Mason, and Anna Mason as representatives for the Settlement Class. ECF No. 367 ¶ 9. Unless otherwise specified, all docket citations are to the MDL docket: No. 6:20-md-2977 (E.D. Okla.). Melissa Weaver's claims have since been dismissed. ECF No. 395.

[2] Koch means, collectively, Koch Foods, Inc. and Koch Meat Co, Inc. (doing business as Koch Poultry Co). The "Koch Group" means Koch and all of their predecessors, successors, assigns, affiliates (including without limitation any affiliates who are alleged co-conspirators), and any and all past, present, and future parents, owners, subsidiaries, divisions, and/or departments.

[3] The Settlement Agreement was filed as an exhibit to Plaintiffs' motions for preliminary approval of the Settlement. ECF No. 358-1 (Exhibit A).

[4] "Defendants" refers to Koch; Tyson; Perdue; Pilgrim's Pride Corporation ("Pilgrim's"); and Sanderson Farms, Inc., Sanderson Farms, Inc. (Foods Division), Sanderson Farms, Inc. (Processing Division), and Sanderson Farms, Inc. (Production Division) (collectively, "Sanderson"). The "remaining Defendants" refers to the remaining, non-Settling Defendants, *i.e.*, Pilgrim's and Sanderson.

1

previously found in its Order preliminarily approving the Settlement, and as set forth in the Plaintiffs' counsel's declarations previously filed in connection with the Settlement,[5] the Settlement is fair, reasonable, and adequate under the criteria of Rule 23(e)(2) and the law of this Circuit. The Settlement should be finally approved.

## II.    BACKGROUND

### A.    Procedural Background

Certain Plaintiffs filed the original action in this MDL on January 27, 2017. Walker Decl. ¶ 7. Following centralization of various related actions by the Judicial Panel on Multidistrict Litigation ("JPML"), Plaintiffs filed their Consolidated Amended Class Action Complaint alleging Defendants and seventeen Co-Conspirators[6]—the largest vertically integrated Broiler[7] processors ("Integrators") among them—conspired to suppress compensation paid to Broiler farmers ("Growers") in violation of Section 1 of the Sherman Act and Section 202 of the Packers and Stockyards Act. *See, e.g., id.* ¶¶ 8-12; *see also* Consol. Class Action Compl. ("CCAC") ¶¶ 166-179 (ECF No. 59).

This action is approaching its sixth birthday, over which time Plaintiffs have vigorously prosecuted their claims while Defendants have aggressively contested them at every stage. *See, e.g.,* Walker Decl. ¶¶ 13-30, 36-60, 115-116. Plaintiffs responded to numerous motions to dismiss for failure to state a claim, to compel arbitration, for improper venue, for lack of personal

---

[5] These are the Declaration of Gary I. Smith, Jr. in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Koch (ECF No. 358-1) ("Smith Decl.") and the Declaration of Daniel J. Walker in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 402-1) ("Walker Decl.").

[6] "Co-Conspirator" means the alleged co-conspirators identified in the CCAC: Agri Stats, Inc., Foster Farms, Mountaire Farms, Wayne Farms, George's, Inc., Peco Foods, Inc., House of Raeford Farms, Simmons Foods, Keystone Foods, Inc., Fieldale Farms Corp., O.K. Industries, Case Foods, Marshall Durbin Companies, Amick Farms, Inc., Mar-Jac Poultry, Inc., Harrison Poultry, Inc., Claxton Poultry Farms, and Norman W. Fries, Inc., including their past, present, and future, direct and indirect, corporate parents (including holding companies), owners, subsidiaries, related entities, Affiliates, associates, divisions, departments, joint ventures, predecessors, and/or successors. *See* Settlement Agreement ¶ 1(e).

[7] "Broilers" excludes specialty chicken that is grown, processed, and sold according to halal, kosher, free range, pasture-raised, or organic standards. Specialty chicken does not include chicken raised without antibiotics, such as No Antibiotics Ever ("NAE") or Antibiotic Free ("ABF") standards. "Broilers" as used herein includes NAE and ABF chicken. *See* Settlement Agreement ¶ 1(d).

jurisdiction, and to dismiss under the "first to file" doctrine. *Id.* ¶¶ 14-17, 39-46. In order to prosecute their claims efficiently and effectively, Plaintiffs also fought for transfer to this Court by the Judicial Panel on Multidistrict Litigation ("JPML"), eventually succeeding in obtaining centralization in this District of five related actions. *Id.* ¶¶ 49-60. And Plaintiffs also prevented further enjoinment of Plaintiffs' damages claims against Pilgrim's Pride as a result of Pilgrim's purported bankruptcy discharge. *Id.* ¶¶ 31-35. To further effective case management and to facilitate discovery, Plaintiffs also negotiated case management orders and stipulations covering the production of hard copy and electronic discovery, confidentiality designations, and the boundaries of expert disclosure and discovery, including renegotiating those same issues once centralization was obtained following Plaintiffs' second trip to the JPML. *Id.* ¶¶ 62-65, 79

Since fact discovery opened in April 2020, Plaintiffs have pursued extensive discovery in this Action,[8] including, but not limited to, the following:

- Serving requests for production of documents on all Defendants and more than 50 subpoenas on non-parties;
- Negotiating the scope of document productions with Defendants and non-parties, which included protracted negotiations over appropriate initial (and supplemental) document custodians and electronic search methodologies, and complicated remote collections and productions in the midst of the Covid-19 pandemic with five Defendants and over fifteen alleged co-conspirators and even more innocent non-party subpoena recipients;
- Propounding several rounds of interrogatories and requests for admissions on Defendants, and negotiating the sufficiency of responses thereto;
- Responding to several rounds of interrogatories and requests for admissions served on Plaintiffs, and negotiating the sufficiency of responses thereto;
- Undertaking strategic review of the more than 1.7 million documents produced by Defendants and non-parties, consisting of more than 10 million pages and

---

[8] Action includes the member cases *Haff Poultry, Inc., et al. v. Tyson Foods, Inc., et al.*, No. 6:17-cv-33 (E.D. Okla.); *In re Sanderson & Koch Broiler Chicken Grower Litig.*, No. 7:18-cv-31 (E.D.N.C.); *McEntire v. Tyson Foods, Inc., et al.*, No. 1:20-cv-2764 (D. Colo.); *Colvin v. Tyson Foods, Inc., et al.*, No. 2:20-cv-2464 (D. Kan.); and *Mason v. Tyson Foods, Inc., et al.*, No. 5:20-cv-07049 (N.D. Cal.).

structured transaction data for more than 650,000 Broiler flocks;

- Reviewing and challenging where appropriate Defendants' privilege logs;

- Seeking production of "downstream" materials from *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill.);

- Taking 73 depositions under Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6) and defending eight class representative depositions;

- Participating in emergency conferences before Magistrate Judge Romero concerning scheduled depositions and the invocation of the Fifth Amendment by Pilgrim's William Lovette and Timothy Stiller;

- Producing more than 10,000 pages of documents in response to Defendants' requests for production, which required complicated remote collection amid the Covid-19 pandemic; and

- Working closely with Plaintiffs' expert economist to submit Plaintiffs' opening expert reports on class certification and merits issues.

Walker Decl. ¶¶ 61, 66-78, 80-81. To secure this discovery, Plaintiffs undertook extensive negotiations with Defendants and non-parties to obtain the requisite discovery while avoiding bringing disputes to the Court where possible and engaging in motion practice, where necessary, regarding non-party depositions, privilege logs, and non-party productions. *Id.* ¶¶ 69, 82-91.[9]

**B. The Settlement Negotiations and Settlement Agreement Terms**

Plaintiffs negotiated the Settlement directly with Koch's skilled, experienced counsel. Smith Decl. ¶¶ 13-14. The parties' extensive negotiations resulted in the final Settlement Agreement with Koch, executed on May 20, 2022. *Id.* ¶¶ 15-16. At the time the Settlement was reached, discovery (described above) was well underway, and Plaintiffs had received more than

---

[9] Plaintiffs previously executed settlement agreements with Tyson and Perdue, on June 30, 2021 and August 11, 2021, respectively. Walker Decl. ¶¶ 92-103. Tyson agreed to pay $21 million and Perdue agreed to pay $14.75 million. *Id.* ¶ 94. Both also provided cooperation in this litigation pursuant to their settlement agreements. *Id.* ¶ 95. The Court granted preliminary approval for both the Tyson and Perdue settlements on August 23, 2021, ECF Nos. 144-145, and approved the form and manner of notice on that same day, ECF No. 146. Walker Decl. ¶¶ 97-99. That notice process commenced on September 22, 2021. *Id.* ¶ 101. Both settlements were finally approved on February 18, 2022, ECF No. 285, and that same day the Court also granted Plaintiffs' motion for an award of attorneys' fees, the reimbursement of litigation expenses, and an award of interim service awards to the class representatives, ECF No. 284.

1.7 million documents from Defendants and non-parties. Smith Decl. ¶¶ 6-12.

The Settlement Agreement defined the Settlement Class as follows:

> All individuals and entities in the United States and its territories that were compensated for Broiler Grow-Out Services[10] by a Defendant or Co-Conspirator, or by a division, subsidiary, predecessor, or Affiliate of a Defendant or Co-Conspirator, at any time during the period January 27, 2013 through December 31, 2019.

Settlement Agreement ¶ 5. Under the Settlement, Koch provides cash and valuable cooperation to Plaintiffs and the members of the Settlement Class.

Under the Settlement, Koch agreed to pay $15.5 million. Settlement Agreement ¶ 9. Koch deposited these funds in an escrow account. Walker Decl. ¶¶ 109; Settlement Agreement ¶ 8. No portion of the Settlement Fund reverts to Koch following final approval because, as discussed herein, the monetary components (net of Court-awarded fees, costs, and claims administration costs) will be distributed to the Settlement Class *pro rata*. Smith Decl. ¶¶ 18-19.

In addition to cash payments, under the Settlement Agreement, Koch has agreed to provide significant non-monetary consideration. First, Koch has agreed to provide Plaintiffs with valuable cooperation to assist their prosecution of Plaintiffs' claims against the remaining Defendants. Koch is required to: respond to an outstanding interrogatory regarding their communications with competitors regarding certain categories of information, including Grower compensation; respond to Plaintiffs' inquiries regarding their structured transaction data; make up to two current employees available for fact depositions and provide a Rule 30(b)(6) witness to testify on behalf of Koch; use reasonable efforts to make two current employees available to appear at trial; use reasonable efforts to cooperate to authenticate documents; and consider reasonable requests for additional information about Plaintiffs' Claims. Settlement Agreement ¶ 10(a)-(b). Second, for a five-year period following final judgment, Koch is prohibited from enforcing existing compulsory arbitration and class action waiver provisions in Grower contracts and including such provisions in new Grower contracts during that period. *Id.* ¶ 10(e).

In consideration of Koch's cash payments and non-monetary consideration, members of the Settlement Class agreed to release certain claims against Koch, relating to or referred to in the Action or arising from the factual predicates of the Action. The release covers only claims

---

[10] "Broiler Grow-Out Services" means Broiler chicken growing services.

against Koch Released Parties.[11] *See* Settlement Agreement ¶ 14.

Under the Confidential Supplement incorporated into the Settlement Agreement, Koch has the option (but not the obligation) to rescind the Settlement Agreement under certain conditions based on the number of members of the Settlement Class that opt out of the Settlement.[12] *See* Settlement Agreement ¶ 20. The Confidential Supplement to the Settlement Agreement also provides for a modest reduction of the Settlement Amount based upon a certain threshold of members of the Settlement Class that exclude themselves from the Settlement Class. ECF No. 358 at 5. The deadline to object to or opt out of the Settlement Class expired on September 23, 2022. Order Approving Notice Plan and Authorizing Issuance of Notice ¶ 5 ("Notice Order") (ECF No. 366). As of October 3, 2022, Plaintiffs' analysis reveals that only 14 opt out notices have been received and the conditions to rescind or reduce the amount of the monetary component of the Settlement Agreement have not been triggered. *See also* Section I.D., *infra* (describing the *de minimis* number of opt outs).

### C.   Preliminary Approval and the Proposed Notice and Claims Process

On May 27, 2022, Plaintiffs filed a motion for preliminary approval of the Settlement as well as a motion for approval of the form and manner of notice of the Settlement to the Settlement Class. ECF Nos. 358-359. The proposed notice program included direct mail notice to Growers for which Defendants and alleged Co-Conspirators provided mailing addresses. ECF No. 359 at 6-7. This direct notice was supplemented by publication notice targeted at Growers for which mailing addresses were unavailable, including publication in a trade periodical as well as in select print and media outlets that reached geographic areas in which certain alleged Co-Conspirators (that did not produce Grower addresses or pay data) contracted with Growers for Broiler Grow-Out Services. *Id.* at 7-9. The latter publication notice was directed at members of the Settlement Class for which direct notice could not be provided. *Id.* This direct mail and publication notice was supplemented by an array of additional online services, including targeted internet advertising, a social media campaign, and a settlement website. *Id.*; ECF No. 359-1 (Decl. of Steven Weisbrot on Proposed Notice Plan ("Weisbrot Notice Decl.")) ¶¶ 19, 22-29.

Additionally, Plaintiffs included two claim forms in the direct mail notice and made them

---

[11] Released Parties are identified in paragraph 1(q) of the Settlement Agreement.

[12] The Confidential Supplement was made available for *in camera* review. ECF No. 358 at 5 & n.10.

available to the members of the Settlement Class via the settlement website or upon request to Angeion (defined *infra*): a pre-populated claim form and an unpopulated claim form. ECF No. 359 at 10-12. Members of the Settlement Class for which Plaintiffs received sufficient data from Defendants and alleged Co-Conspirators reflecting Grower compensation over the class period received a claim form that was pre-populated with the payments members of the Settlement Class received for Broiler Grow-Out Services, obviating the need for those members of the Settlement Class to complete a claim form. *See* Smith Decl. ¶ 18; Weisbrot Notice Decl. Ex. D (proposed pre-populated claim form). These members of the Settlement Class are nonetheless permitted to contest the information that was pre-populated by submitting corrected information and documentation. *See* Weisbrot Notice Decl. Ex. D at 1. Members of the Settlement Class for which Plaintiffs lacked sufficient data on compensation paid by Defendants and alleged Co-Conspirators received an unpopulated claim form, which they had the option of returning with documentation reflecting their total compensation for Broiler Grow-Out Services or, alternatively, if they lack that documentation, with information from which their total compensation could be estimated. *See* Smith Decl. ¶ 19; Weisbrot Notice Decl. ¶ 14 & Ex. E.

Also, on May 27, 2022, Koch caused notice of their proposed class action settlement with Plaintiffs to be provided to each appropriate Federal and State official via UPS and U.S. Postal Service Certified Mail, pursuant to 28 U.S.C. § 1715(b). Koch filed its Notice of Compliance confirming this on June 6, 2022. ECF No. 363 (Notice of Compliance with Ex. A, Declaration of Stephanie J. Fiereck, Esq. on Implementation of CAFA Notice.).

On June 10, 2022, the Court preliminarily approved the Settlement; certified the Settlement Class under Federal Rule of Civil Procedure 23(b)(3); appointed Hausfeld LLP and Berger Montague PC as Settlement Class Counsel; appointed Angeion Group, LLC ("Angeion") as the claims administrator; appointed Plaintiffs as representatives of the Settlement Class; and approved the notice plan, the form of notice, and the proposed claim forms. ECF Nos. 366-367. The Court found the notice plan represented the "best notice that is practicable under the circumstances," was "reasonably calculated to reach the members of the Settlement Class," and met "the requirements of Federal Rule of Civil Procedure 23 and due process." Notice Order ¶ 3.

### D. Class Notice, Objections, and Exclusions

Following approval of the notice plan, Angeion provided potential members of the Settlement Class with the Court-approved notice in accord with the settlement notice program.

*See generally* Declaration of Steven Weisbrot Regarding Implementation of Notice Plan ("Weisbrot Implementation Decl."), attached hereto. Beginning on July 11, 2022, Angeion successfully mailed direct notice to 22,391 members of the Settlement Class.[13] Weisbrot Implementation Decl. ¶¶ 5-10 & Ex. A-C.[14]

On the same day, Angeion launched the programmatic internet advertising banner program, which uses algorithms to identify websites most likely to be visited by members of the Settlement Class, as well as the Facebook and Instagram social media campaign, achieving a total of over 4.6 million impressions with banner ads. *Id.* ¶¶ 11-13 & Exs. D & E. Also beginning on July 11, 2022, Angeion placed publication notice in eight local print publications to reach Growers who were less likely to be mailed direct notice. *Id.* ¶ 14 & Ex. F. Notice was also published in the national trade publication *Poultry Times*, whose readership of 13,000 includes many Growers. *Id.* ¶ 15 & Ex. G. Angeion issued a press release publicizing the Settlements that was distributed over the National and Agriculture circuits of a major newswire service to drive traffic to the settlement website. *Id.* ¶ 16 & Ex. H.

Angeion timely launched the settlement website to provide potential members of the Settlement Class with information about the Settlement, which included a downloadable direct notice and an unpopulated claim form, the Settlement Agreement, court filings related to the Settlement (including Plaintiffs' application for attorneys' fees and costs and interim service awards, posted on August 29, 2022), a "Frequently Asked Questions" section, a contact page allowing users to submit questions to Angeion, and a means to upload completed claims forms. *Id.* ¶ 17. Angeion also established a dedicated toll-free line, allowing callers to speak with a live operator during business hours, request a claim form, and get answers to their questions. *Id.* ¶ 19. As of September 16, 2022, there were 5,653 unique visitors on the website and 633 calls were made to the dedicated toll-free line, totaling more than 3,892 minutes (or approximately 65 hours of call time). *Id.* ¶¶ 18, 20.

---

[13] Angeion initially mailed direct notice to 23,577 addresses. Weisbrot Implementation Decl. ¶¶ 7-9. 1,383 of those were returned undeliverable. *Id.* ¶ 8. Following address verification searches for those addresses (skip tracing), Angeion remailed Notice to 197 addresses. *Id.* The net successfully mailed notice packets is thus 22,391. *Id.* ¶ 9.

[14] The final direct notice and claim forms provided to potential class members are attached as Exhibits A-C to the Weisbrot Implementation Declaration.

The deadline for mailing objections to the Settlement or requests for exclusion from the Settlement Class was September 23, 2022. *See* Notice Order ¶ 5. As of October 3, 2022, 14 Growers requested exclusion from the Settlement. Weisbrot Implementation Decl. ¶ 22 & Ex. I. As of October 3, 2022, one objection has been filed. *Id.* ¶ 23.

### E.    The Proposed Allocation and Distribution to the Settlement Class

Members of the Settlement Class who received pre-populated claims forms—those for whom Plaintiffs possessed adequate compensation data—were notified that if they do not exclude themselves from the Settlement or contest the data in the pre-populated form they will be deemed to have accepted the pre-populated calculations. Weisbrot Implementation Decl., Ex. B at 1-3. Their settlement award will be calculated based on the compensation in the pre-populated claims form. Thus, an estimated 99 percent of the Settlement Class is eligible to receive payment from the Settlement even if they do nothing. Smith Decl. ¶ 18. Growers who received an unpopulated claim form or obtained a claim form from Angeion or the settlement website have until February 6, 2023 to return the form with completed compensation data or other information from which their Settlement award will be calculated. Notice Order ¶ 5. As of October 3, 2022, Angeion has received 599 Claim Form submissions or updated address submissions. Weisbrot Implementation Decl. ¶ 21.

### F.    Plaintiffs' Application for Attorneys' Fees and Litigation Costs

The notice informed members of the Settlement Class that Settlement Class Counsel would seek an award of attorneys' fees, capped at one-third of the gross settlement fund and reimbursement of litigation costs of up to $3 million, and advised that the motion would be available on the settlement website prior to the objection and opt-out deadlines. Weisbrot Implementation Decl. Ex. A ¶ 15. On August 26, 2022, Plaintiffs filed their motion for fees and costs and for interim service awards. ECF No. 402. The petition sought an award of attorneys' fees of one-third of the gross settlement fund (or $5,166,667 million) and reimbursement of $1,250,268.23 in litigation costs. *Id.* at 6, 19. Angeion posted the fee petition on the settlement website on August 29, 2022. Weisbrot Implementation Decl. ¶ 17.

III.    **ARGUMENT**

A.  **The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Finally Approved**

The Settlement should be approved. Rule 23(e) requires that before finally approving a class action settlement, a court must find that the settlement is fair, reasonable, and adequate considering whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2). These considerations augment rather than supplant the traditional factors courts have considered at final approval. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-cv-2142, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). In this Circuit, those traditional factors are whether: (1) the proposed settlement was fairly and honestly negotiated; (2) serious questions of law and fact place the ultimate outcome of the litigation in doubt; (3) the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties judge the settlement to be fair and reasonable. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021). With the exception of the fourth traditional factor, this Circuit's factors overlap with the considerations under Rule 23(e)(2). *Rodriguez*, 2020 WL 3288059, at *2. The Settlement warrants final approval under all of these factors.

1.  **Plaintiffs and Settlement Class Counsel Have Skillfully Represented the Settlement Class**

In certifying the Settlement Class, the Court previously found Settlement Class Counsel and Plaintiffs adequate under Rule 23(a), ECF No. 367, which is sufficient to satisfy Rule 23(e)(2)(A). *See Suaverdez v. Circle K Stores, Inc.*, No. 20-cv-01035, 2021 WL 4947238, at *7 (D. Colo. June 28, 2021); *Lawrence v. First Fin. Inv. Fund V, LLC*, No. 19-cv-174, 2021 WL 3809083, at *6 (D. Utah Aug. 26, 2021) (Shelby, J.). Under Rule 23(e)(2)(A), courts may also evaluate "the actual performance of counsel acting on behalf of the class," including the extent of discovery taken. *Montgomery v. Cont'l Intermodal Grp. Trucking LLC*, No. 19-cv-940, 2021 WL 1339305, at *4 (D.N.M. Apr. 9, 2021) (citations and quotation omitted). The extent of discovery informs whether the settlement is made with sufficient information about the case and demonstrates that the parties have litigated in an adversarial posture. William B. Rubenstein, 4 Newberg on Class Actions § 13:49 (5th ed.); *see also Montgomery,* 2021 WL 1339305, at *4-5.

10

Those considerations weigh in favor of approval here.

The record in this Action demonstrates Settlement Class Counsel's adequacy and the informed basis on which they and Plaintiffs negotiated the Settlement. Settlement Class Counsel have extensive experience with the prosecution and settlement of antitrust class actions.[15] As discussed in Section I.A., *supra*, Settlement Class Counsel have zealously and skillfully represented the interests of Plaintiffs and the Settlement Class through almost six years of hotly contested litigation in five district courts, a bankruptcy court, and two visits to the JPML: they have defeated multiple motions to dismiss; fought a purported bankruptcy discharge of Plaintiffs' claims; secured centralization before this Court; conducted extensive discovery, having served and negotiated production requests and interrogatories, conducted targeted review of the more than 1.7 million documents produced, and taken over 70 depositions; secured valuable cooperation from Tyson, Perdue and Koch; and have diligently complied with the notice plan and settlement procedures. *See, e.g.*, *Montgomery*, 2021 WL 1339305, at *4.

The Plaintiffs selected as class representatives also have actively participated in the prosecution of their claims by providing information, participating in discovery, and attending hearings, and have no conflicts with the members of the Settlement Class; each is a Grower that suffered the same harm as every member of the Settlement Class and shares the same interests of the Settlement Class in obtaining relief. *See McNeely v. Nat'l Mobile Health Care, LLC,* No. 07-cv-933, 2008 WL 4816510, at *7 (W.D. Okla. Oct. 27, 2008) (considering whether representative had interests antagonistic to the class); *McGaffin v. Argos USA, LLC,* No. 16-cv-104, 2020 WL 3491609, at *4 (S.D. Ga. June 26, 2020) (Rule 23(e)(2)(A) satisfied where representatives have same interests and claims as the class and participated in action).

### 2.    The Settlement Was Reached After Arm's Length Negotiation[16]

The Settlement satisfies Rule 23(e)(2)(B), which requires courts to evaluate whether the Settlement was reached after fair and honest arm's length negotiations. Similar to Rule 23(e)(2)(A), courts evaluate whether a settlement was negotiated fairly and honestly by considering the duration of litigation and status of discovery prior to the Settlement and the

---

[15] Settlement Class Counsel's antitrust and class action experience is described in detail in each of their firm resumes. *See* ECF Nos. 214-18 & 214-19.

[16] "The Tenth Circuit's fair and honest negotiation requirement can be subsumed under Rule 23's second factor—arm's-length negotiation." *Rodriguez*, 2020 WL 3288059, at *3.

adversarial nature of the process. *See Cisneros v. EP Wrap-It Insulation, LLC*, No. 19-cv-500, 2021 WL 2953117, at *6 (D.N.M. July 14, 2021) (considering degree of active litigation, disputes, and circumstances of settlement negotiations); *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-249, 2020 WL 4041456, at *3 (D. Colo. July 17, 2020) (same); *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821, 2018 WL 6620724, at *3 (D. Colo. Dec. 18, 2018) (approving settlement after considering status of discovery and duration of litigation).

The record demonstrates the fairness of the negotiation process for the Settlement. As described in Section I.A., *supra*, Plaintiffs and Defendants had been engaged in adversarial litigation for close to six years when the Settlement was reached. Further, the terms of the Settlement were negotiated by Plaintiffs' counsel with counsel for Koch over many months.

The structure of the Settlement and plan of allocation and distribution—which maximizes relief to the Settlement Class—also supports a finding of arm's-length negotiations: Koch has no reversionary interest in the Settlement because the entirety of the net Settlement Fund is distributed to the members of the Settlement Class *pro rata*; and the Settlement does not specify attorneys' fees other than that Plaintiffs may petition the Court for an award of fees and costs from the gross Settlement Fund, the amount of which can be determined by only the Court. *Cf., e.g.*, *In re Samsung*, 997 F.3d at 1088-91 (scrutinizing fairness of agreement that specified fee for counsel in the agreement with "kicker" provision that returned amounts not awarded by the court to defendant, not the class); *Stewart v. USA Tank Sales & Erection Co.*, No. 12-cv-5136, 2014 WL 836212, at *6 (W.D. Mo. Mar. 4, 2014) (scrutinizing settlements that provide for large reversions to the settling defendants).

### 3. The Relief Provided to the Settlement Class is More Than Adequate, it is Substantial

The relief achieved for the Settlement Class is more than adequate under Rule 23(e)(2)(C), which requires that courts evaluate whether the relief provided for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement [made in connection with the

Settlement]."[17] Fed. R. Civ. P. 23(e)(2)(C).

The terms of the Settlement Agreement itself make clear the substantial relief afforded to members of the Settlement Class. As discussed in Section I.B., *supra*, the Settlement provides a total of $15.5 million in cash consideration as well as meaningful cooperation that will aid Plaintiffs' ongoing prosecution of the claims against the remaining Defendants, including depositions and trial witnesses. Courts recognize the value of cooperation in partial settlements in ongoing antitrust litigation. *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 29 (D.D.C. 2019) (noting cooperation provisions weigh in favor of approval); *In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) (finding cooperation throughout the course of pre-trial proceedings and trial is valuable consideration); *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2006 WL 2983047, at *1 (D. Kan. Oct. 17, 2006) (approving antitrust class action settlement, noting the value of cooperation provisions). Considering the factors under Rule 23(e)(2)(C), the monetary and non-monetary consideration provide significant relief to the Settlement Class. Additionally, Koch's agreement to forego enforcement or inclusion of arbitration and class-waiver provisions in contracts with members of the Settlement Class provides significant structural relief for the Settlement Class.

a.    **The costs, risks, and delay of trial and appeal favor final approval**[18]

Notwithstanding this substantial relief, courts must evaluate the value of settlements considering the cost and risk of continued litigation, and the delay in monetary relief should the claims proceed to trial and through appeal. This factor weighs in favor of final approval here.

Courts consider antitrust cases to be "particularly risky" and acknowledge that they are among the most complex actions to prosecute. *See, e.g.*, *In re Lithium Ion Batteries Antitrust*

---

[17] Rule 23(e)(2)(C)(iv) is inapplicable here. There are no agreements in connection with the Settlement. The confidential supplement incorporated into the Settlement Agreement—which sets conditions for reduction of the Settlement Amount or rescission of the Agreement based on class member exclusions—are terms of the Settlement Agreement itself and are available to the Court for *in camera* review. *See supra* n.11. In any event, Plaintiffs' analysis shows that the triggering events for the confidential supplement has not been met, mooting it.

[18] The Tenth Circuit's requirement that courts evaluate whether "serious questions of law and fact . . . plac[e] the ultimate outcome of the litigation in doubt and whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. . . . largely overlap[s] and can be subsumed under" Rule 23(e)(2)(C)(i)'s evaluation of the costs, risk, and delay of trial and appeal. *Rodriguez*, 2020 WL 3288059, at *3.

*Litig.*, No. 13-md-2420, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) (collecting cases). Plaintiffs remain confident in their claims, but there are complex questions of law and fact that pose risks in any antitrust litigation. Defendants have disputed and will continue to dispute the existence and scope of the alleged anticompetitive conspiracy. This "[l]egal complexity [and] factual complexity . . . all weigh in favor of settlement." Newberg § 13:52. Additionally, although Plaintiffs are confident that the proposed class will be certified for litigation purposes, they expect Defendants to vigorously contest class certification as well as Plaintiffs' experts' conclusions through *Daubert* challenges. *See Retta v. Millennium Prods., Inc.*, No. 15-cv-1801, 2017 WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017). And proceeding through class certification and summary judgment to trial, even with the strongest evidentiary arsenal, poses risks because any "ultimate jury result is uncertain, unknown and unpredictable." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997). This is particularly so in a complex antitrust case. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1327 (5th Cir. 1981) ("The complexity of an antitrust jury trial of [multiple] defendants gives rise to the very real possibility that the plaintiffs' case could be prejudiced.").

Absent this Settlement, with summary judgment briefing not scheduled to conclude until October 2023, trial likely 18 months away, and any trial outcome likely subject to a lengthy appeal process, members of the Settlement Class would need to wait years before receiving any recovery through a trial against Koch. Courts recognize that a class is often "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, 2008 WL 4816510, at *13; *see also Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) ("It has been held prudent to take a bird in the hand instead of a prospective flock in the bush.") (quotation omitted); *Childs v. Unified Life Ins. Co.*, No. 10-cv-23, 2011 WL 6016486, at *13 (N.D. Okla. Dec. 2, 2011) (noting settlement "creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation") (quotation omitted). And by virtue of principles of joint and several liability, Plaintiffs can recover the remainder of their class-wide treble damages from the remaining Defendants.

      **b.**    **The proposed method of distributing relief to the Settlement Class, including the method of processing claims, favors final approval**

Plaintiffs satisfy the relevant standard for ensuring that the claims process facilitates

filing legitimate claims while protecting against unduly burdensome claims procedures. Fed. R. Civ. P. 23(e)(2)(C)(ii) advisory committee notes (2018 amendments). This ensures that the claims process and distribution provide "as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." Newberg § 13:53; *see also Rodriguez*, 2020 WL 3288059, at *3.

The claims and notice process here ensures that an overwhelming majority of the Settlement Class will receive a distribution from the Settlement Fund without having to do anything at all. As described in Section I.C., *supra*, Plaintiffs obtained from Defendants and alleged Co-Conspirators sufficient compensation information and mailing addresses for most members of the Settlement Class, allowing them to mail claims forms that were pre-populated with the compensation information on which their settlement awards would be based. Those who receive pre-populated claims forms and do not opt out of the Settlement will automatically receive their *pro rata* shares of the Settlement Fund even if they do nothing in response to the notice, ensuring an outstanding claims rate. Courts widely recognize that claims procedures that require little or no action by settlement class members to receive a payment satisfy Rule 23(e)(2)(C)(ii). *Moreno v. Beacon Roofing Supply, Inc.*, No. 19-cv-185, 2020 WL 3960481, at *5 (S.D. Cal. July 13, 2020) (finding "claim process is not burdensome and straightforward because it does not require Class Members to submit a claim to receive compensation"); *Vargas v. Ford Motor Co.*, No. 12-cv-8388, 2020 WL 1164066, at *9 (C.D. Cal. Mar. 5, 2020) (finding method of distribution appropriate where claims forms are pre-populated); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-cv-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (similar).

Growers who are among the small portion of the Settlement Class for which Plaintiffs did not have sufficient claims data to provide a pre-populated claim form or whose identities were unknown (approximately one percent), need only submit a claim form with their compensation information and documentation. If they do not have that information, they may instead provide basic information to qualify for a payment, such as the name of the Defendant or alleged Co-Conspirator for whom they grew Broilers, the number of farms operated, and years those farms were in operation, from which their resulting *pro rata* share may be calculated. Weisbrot Implementation Decl. Ex. C; Weisbrot Notice Decl. Ex. E.[19] A claims process that requires

---

[19] The calculation has been made available on the settlement website.

submission of such basic data provides for an efficient and reasonable distribution while meeting the goals of Rule 23(e)(2)(C)(ii) to ensure legitimate claims are submitted. *See, e.g.*, *Hale*, 2018 WL 6606079, at *5 (finding claims procedure to be claimant-friendly, efficient, and cost-effective where class members whose contact information is known need not submit a claim at all and others need only submit a simple claim form); *Vargas*, 2020 WL 1164066, at *9 (requirement to submit basic documentation is reasonable).

        **c.**       **The proposed award of attorneys' fees favors final approval**

Here, Plaintiffs have sought an award of attorneys' fees of one-third of the gross Settlement Fund—an amount routinely recognized as falling within an acceptable range of fee awards. *Cook v. Rockwell Int'l Corp.*, No. 90-cv-181, 2017 WL 5076498, at *1 & n.1 (D. Colo. Apr. 28, 2017) (citing cases awarding fees from one-third to 40% of the common fund). [20] A one-third fee in class action common fund cases, including in antitrust cases, is routinely awarded. *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (awarding one-third of $835 million settlement); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-md-1468, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (finding award of one-third of the fund falls within the range of awards deemed reasonable by courts). And, as explained in Plaintiffs' fee petition, the award is warranted under the applicable law of this Circuit. *See* ECF No. 402 at 8-17.

        **4.**       **The Settlement and Proposed Plan of Distribution Treat Members of the Settlement Class Equitably**

The Court-approved distribution plan treats all members of the Settlement Class equitably. As discussed in Section I.E., *supra*, Plaintiffs propose to distribute the Settlement Fund *pro rata*, based on total qualifying compensation each member of the Settlement Class received for Broiler Grow-Out Services from any Defendant or alleged Co-Conspirator during the class period as a percentage of total qualifying compensation received by all members of the

---

[20] *See also, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1099 (D. Kan. 2018) (awarding one-third of common fund); *Shaw v. Interthinx, Inc.*, No. 13-cv-01229, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-cv-0944, 2006 WL 3505851, at *1-2 (N.D. Okla. Dec. 4, 2006) (noting that a "contingency fee of one-third is relatively standard in lawsuits that settle before trial").

Settlement Class who have valid claims. Such a *pro rata* distribution is fair and equitable because it compensates members of the Settlement Class based on their relative harm suffered.

Since the 2018 amendment of Rule 23(e) expressly required this consideration, courts have consistently found *pro rata* distribution is equitable to settlement classes. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) (in antitrust action, finding courts uniformly approve plans of allocation distributing funds on a *pro rata* basis as equitable under Rule 23(e)(2)(D)); *Perks v. Activehours, Inc.*, No. 19-cv-5543, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) (*pro rata* distribution is "inherently equitable" because it allocates settlement proceeds based on the amount of each member's potential damages); *Cisneros*, 2021 WL 2953117, at *10 (finding *pro rata* allocation provides equitable treatment). Even prior to the 2018 amendment, courts considered this factor and routinely found *pro rata* distribution of settlement funds in antitrust actions to be fair and reasonable. *See, e.g.*, *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) (*pro rata* distribution has "repeatedly been deemed fair and reasonable").[21]

### 5. The Parties Agree that the Settlement Is Fair, Reasonable, and Adequate

Experienced counsel for both Plaintiffs and Koch endorse the Settlement,[22] which is a further basis to approve it. *Rodriguez*, 2020 WL 3288059, at *4 ("If all Class Members are treated equitably, counsel for both sides agree the outcome is good, and there are no objections to the Settlement Agreement, it appears the parties agree the settlement is fair and reasonable."). Counsel's opinion that the Settlement is fair and reasonable is entitled to "considerable weight." *McNeely*, 2008 WL 4816510, at *13; *see also In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 116 (D. Kan. 1986) (noting "the professional judgment of counsel involved in the litigation—who have made a determination that the settlement represents a fair allotment for their clients—is entitled to significant weight"); *Alvarado*, 723 F. Supp. at 548 ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."). This is particularly true where, as demonstrated above, Settlement Class Counsel

---

[21] *See also, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (allocation plan based on the type and extent of their injuries is generally reasonable).

[22] *See* Smith Decl. ¶ 17.

and the Plaintiffs have already zealously represented the interests of the Settlement Class. *See* Section I.A., *supra*.

Settlement Class Counsel are experienced antitrust litigators who, at the time of the Settlement, were extremely knowledgeable about the factual and legal issues in the case. *See, e.g.*, Walker Decl. ¶¶ 114-115. As demonstrated by Plaintiffs' motion papers and as discussed herein, it is the opinion of Settlement Class Counsel that the Settlements offer tremendous value to the Settlement Class both because of the monetary consideration provided now and Koch's ongoing cooperation through trial that will aid Plaintiffs in securing additional monetary and injunctive relief from the remaining Defendants.

The reaction of the Settlement Class demonstrates that the class members agree. Only 14 Growers have excluded themselves from the Settlement. Weisbrot Implementation Decl. ¶ 22 & Ex. I. And there has been only one timely objection by any member of the Settlement Class, by proposed class representative Myles B. Weaver. ECF No. 407. Mr. Weaver's objection is not to the Settlement itself or the proposed plan of allocation of the Settlement, but instead solely directed at the attorneys' fees requested in connection with the Settlement. *Id.* Mr. Weaver's heart is in the right place. Mr. Weaver is doing what he thinks is best for Growers in the United States and he believes it is in the interests of Growers to receive the Koch Settlement proceeds either without any reduction, or with a reduced reduction, for attorneys' fees. Plaintiffs respectfully submit that there are "significant public policy considerations that weigh in favor of approval" of Plaintiffs' requested attorneys' fees, namely, that it "is important to encourage top-tier litigators to pursue challenging antitrust cases"—cases "that go to the heart of our economy." *In re Credit Default Swaps Antitrust Litig.,* No. 13-md-2476, 2016 WL 2731524, at \*18 (S.D.N.Y. Apr. 26, 2016) ("Our economic health, and indeed our stability as a nation, depend upon adherence to the rule of law and our citizenry's trust in the fairness and transparency of our marketplace."). Consistent with the important public policy of encouraging top tier litigators to pursue costly antitrust litigation and analogous precedents of the Tenth Circuit, *see* Section II.A.3.c, *supra*, Mr. Weaver's objection, while well-intentioned, should be overruled.

## B.  Koch Provided the Notice Required by CAFA

CAFA requires that all defendants participating in a settlement provide notice to the "appropriate state official" in every state where a class member resides and the "appropriate federal official" no later than 10 days after a proposed settlement is filed in court.  28 U.S.C.

18

§ 1715(b). The "appropriate federal official" is defined as the Attorney General of the United States. *Id.* at § 1715(a)(1)(A). The "appropriate state official" is the "person in the State who has the primary regulatory or supervisory responsibility with respect to the defendant, or who licenses or otherwise authorizes the defendant to conduct business in the State, if some or all of the matters alleged in the class action are subject to regulation by that person. If there is no primary regulator, supervisor, or licensing authority, or the matters alleged in the class action are not subject to regulation or supervision by that person, then the appropriate State official shall be the State attorney general." *Id.* at 1715(a)(2).

The Notice must include:

> (1) a copy of the complaint and any materials filed with the complaint and any amended complaints (except such materials shall not be required to be served if such materials are made electronically available through the Internet and such service includes notice of how to electronically access such material); (2) notice of any scheduled judicial hearing in the class action; (3) any proposed or final notification to class members of (A)(i) the members' rights to request exclusion from the class action; or (ii) if no right to request exclusion exists, a statement that no such right exists; and (B) a proposed settlement of a class action; (4) any proposed or final class action settlement; (5) any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants; (6) any final judgment or notice of dismissal; (7) (A) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official; or (B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement; and (8) any written judicial opinion relating to the materials described under subparagraphs (3) through (6) above.

*Id.* at § 1715(b). The Notices Koch caused to be served complied with these requirements. ECF No. 363 (Notice of Compliance).

### C.   Notice to the Settlement Class Comported with Rule 23 and Due Process

The means and manner of notice satisfies the Federal Rules and due process. Under Rule 23(e)(1), notice of the settlement must be provided in a reasonable manner to all class members who would be bound by the proposal. Fed. R. Civ. P. 23(e)(1). Under Rule 23(c)(2) and procedural due process, the court must direct to members of a Rule 23(b)(3) monetary relief class "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (noting

constitutional guarantees and the requirements of Rule 23(c)(2)(B) are coextensive); *see also Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015). Due process does not require, however, "*actual* notice to each party intended to be bound by the adjudication of a representative action." *DeJulius*, 429 F.3d at 944 (emphasis in original). It is universally recognized that the method of notice used here, namely direct notice supplemented with publication notice targeted to reach class members who cannot be sent direct notice, satisfies due process and Rule 23(c)(2)(B). *See, e.g.*, *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-2792, 2020 WL 2616711, at *11 (W.D. Okla. May 22, 2020), *aff'd*, 997 F.3d 1077 (10th Cir. 2021).

Substantively, Rule 23(b)(3) class notices must state in plain, easily understood language, (i) the nature of the action; (ii) the definition of the class that is being certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Notice will satisfy Rule 23 if it gives Rule 23(b)(3) class members "sufficient information about the specific lawsuit to allow a class member to assess whether to exercise the right either to appear or to opt out." *Tennille*, 785 F.3d at 437 (quotation and citation omitted); Weisbrot Implementation Decl. Exs. A, D-H.

Here the notice plan approved by the Court and as implemented by Settlement Class Counsel and Angeion satisfies these criteria. Settlement Class Counsel obtained from Defendants and alleged Co-Conspirators mailing addresses for 23,375 members of the Settlement Class. Angeion mailed direct notice and claims forms to those addresses, and remailed notice to updated addresses for addressees whose notice was returned undeliverable, resulting in direct notice mailed to the overwhelming majority of the Settlement Class. *See* Section I.D., *supra*, Weisbrot Implementation Decl. ¶¶ 6-10.

For the remainder of the Settlement Class for which Settlement Class Counsel did not have mailing addresses, a supplemental publication notice program was implemented. Publication notice was placed in print publications in geographic locations in which members of the Settlement Class without known mailing addresses raised Broilers (in Ohio, Georgia, and North Carolina), and in a trade publication targeted at the Broiler industry. Weisbrot Implementation Decl. ¶¶ 11-16. An internet-based programmatic display advertising campaign

20

was launched, targeting placement on websites expected to be of interest to Growers, and a social media campaign engaged with Settlement Class members via news feed and story units, image ads, and right column ads. *Id.* ¶¶ 11-13, 16. Publication notice directed members of the Settlement Class to the settlement website where they could obtain the Settlement Agreement, the long form notice, and an unpopulated claim form. *Id.* Exs. D-F. This notice—combining direct notice to nearly all members of the Settlement Class and robust publication notice— satisfies Rule 23(c)(2) and due process. *See, e.g.*, *In re Samsung,* 2020 WL 2616711, at *9-11.

Similarly, the substance of the notice satisfied Rule 23(c)(2)(B). The direct and publication notice informed members of the Settlement Class: (i) about the nature of the action; (ii) of the definition of the class that was being certified; (iii) about the class claims, issues, or defenses; (iv) that each has a right to enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who timely requests exclusion; (vi) how and when to request exclusion; and (vii) about the binding effect of a class judgment on members. Weisbrot Implementation Decl. Ex. A at ¶ 1-3, 5, 14, 16-17; 21-24. The notice also used clear and concise language in conveying this information and identified all critical deadlines as well as the date of the fairness hearing. *See id.* Ex. A at 2-3, 14. Thus, the notice met all of the requirements of Rule 23. *See Tennille*, 785 F.3d at 436-37 (finding notice adequate when notice generally informed class members that if they did not opt out, they would give up their right to sue defendant for the claims the lawsuit resolved); *Chieftain Royalty Co. v. XTO Energy Inc.*, No. 11-cv-29, 2018 WL 501656, at *3 (E.D. Okla. Jan. 18, 2018) (approving notice that, *inter alia*, described the terms and effect of the settlement, notified the class of important deadlines, and described the procedure for objecting and opting out); *In re Samsung*, 2020 WL 2616711, at *10 (approving notice that, *inter alia*, explained the nature of the action, the definition of the class certified, identified the claims, explained that the court will exclude any member who makes a timely request, and provided important deadlines).

Finally, the notice disclosed the maximum amount Plaintiffs would seek from the gross Settlement Fund for attorneys' fees and reimbursement of litigation costs, and notified members of the Settlement Class that Plaintiffs' request for fees, costs, and service awards would be posted on the settlement website prior to the objection deadline. Weisbrot Implementation Decl. Ex. A ¶ 15. Plaintiffs' fee petition was posted on the website on August 29, 2022. *Id.* ¶ 17. Members of the Settlement Class thus had adequate notice of the fee petition and an opportunity

to review it prior to deciding whether to exclude themselves from or object to the Settlement. *See In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-2792, 2019 WL 6118267, at *1-2 (W.D. Okla. Nov. 18, 2019).

### D. Final Judgment as to Koch Is Proper Under Rule 54(b)

"As a general matter, the courts of appeal have jurisdiction only to review the 'final decisions' of district courts" pursuant to 28 U.S.C. § 1291. *Miller v. Basic Rsch., LLC*, 750 F.3d 1173, 1175–76 (10th Cir. 2014). However, where its requirements are met, "Rule 54(b) permits district courts to authorize immediate appeal of dispositive rulings on separate claims in a civil action raising multiple claims." *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 409 (2015). Specifically, Rule 54(b) permits entry of final judgment "as to one or more, but fewer than all, claims or parties" permitted that the Court determines that there is "no just reason for delay." Fed. R. Civ. P. 54(b). In the Tenth Circuit, three requirements have evolved to guide the Court's Rule 54(b) analysis. *First*, the "order must stem from a lawsuit that involves multiple claims." *Waltman v. Georgia-Pacific, LLC*, 590 Fed. Appx. 799, 809 (10th Cir. 2010). *Second*, the "order must represent a final decision on at least one of the claims." *Id. Finally*, the "order must include the district court's express determination 'that there is no just reason for delay.'" *Id.* For the same reasons advanced by Plaintiffs in their request for Rule 54(b) judgment as to Tyson and Perdue, *see* ECF No. 288, Plaintiffs respectfully submit that this standard is satisfied as to Koch, as well.

## IV.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreement with Koch, grant final approval to the *pro rata* distribution, find that Koch has provided the appropriate notice pursuant to CAFA, find notice to the Settlement Class comported with Rule 23 and due process, and determine that there is no just cause for delay and entry of judgment as to Koch under Rule 54(b) is appropriate.

Dated: October 3, 2022                    Respectfully submitted,

*/s/ Gary I. Smith, Jr.*
Gary I. Smith, Jr.*
Kyle G. Bates*
**HAUSFELD LLP**
600 Montgomery St, Ste 3200
San Francisco, CA 94111
Telephone: (415) 633-1908

Facsimile: (415) 633-4980
Email: gsmith@hausfeld.com
Email: kbates@hausfeld.com
Michael D. Hausfeld*
James J. Pizzirusso*
Melinda R. Coolidge*
Samantha Derksen*
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: mhausfeld@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: mcoolidge@hausfeld.com
Email: sderksen@hausfeld.com
Email: sderksen@hausfeld.com

Eric L. Cramer*
Patrick F. Madden*
David Langer*
Ellen T. Noteware*
Michaela L. Wallin*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: ecramer@bm.net
Email: pmadden@bm.net
Email: dlanger@bm.net
Email: enoteware@bm.net
Email: mwallin@bm.net

Daniel J. Walker*
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
Email: dwalker@bm.net

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

M. David Riggs
Donald M. Bingham
Kristopher Koepsel
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
502 West Sixth Street
Tulsa, OK 74119
Telephone: (918) 699-8914
Facsimile: (918) 587-9708
Email: driggs@riggsabney.com
Email: don_bingham@riggsabney.com
Email: Email: kkoepsel@riggsabney.com

William A. Edmondson (OBA No. 2628)
**RIGGS ABNEY NEAL TURPEN ORBISON & LEWIS**
528 N.W. 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: dedmondson@riggsabney.com

*Liaison Counsel for Plaintiffs and the
Proposed Class*

Larry D. Lahman (OBA No. 5166)
Roger L. Ediger (OBA 19449)
**MITCHELL DECLERK, PLLC**
202 West Broadway Avenue
Enid, OK 73701
Telephone: (580) 234-5144
Facsimile: (580) 234-8890
Email: ldl@mdpllc.com
Email: rle@mdpllc.com

Vincent J. Esades*
**HEINS MILLS & OLSON, PLC**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: vesades@heinsmills.com

Warren T. Burns*
**BURNS CHAREST, LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550

24

Facsimile: (469) 444-5002
Email: wburns@burnscharest.com

Gregory L. Davis*
**DAVIS & TALIAFERRO, LLC**
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: (334) 832-9080
Facsimile: (334) 409-7001
Email: gldavis@knology.net

Charles D. Gabriel*
**CHALMERS & ADAMS LLC**
North Fulton Satellite Office
5755 North Point Parkway, Suite 251
Alpharetta, GA 30022
Telephone: (678) 735-5903
Facsimile: (678) 735-5905
Email: cdgabriel@cpblawgroup.com

Larry S. McDevitt*
David M. Wilkerson*
**VAN WINKLE LAW FIRM**
11 North Market Street Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: lmcdevitt@vwlawfirm.com
Email: dwilkerson@vwlawfirm.com

Harlan Hentges (OBA No. 17911)
**HENTGES & ASSOCIATES, PLLC**
102 East Thatcher Street
Edmond, OK 73034
Telephone: (405) 340-6554
Facsimile: (405) 340-6562
Email: harlan@organiclawyers.com

John C. Whitfield*
Caroline R. Taylor*
**WHITFIELD COLEMAN BULLOCK, PPLC**
19 North Main Street
Madisonville, KY 42431
Telephone: (270) 821-0656
Facsimile: (270) 825-1163
Email: jwhitfield@wcbfirm.com
Email: caroline@wbmllp.com

25

J. Dudley Butler*
**BUTLER FARM & RANCH LAW GROUP,
PLLC**
499-A Breakwater Drive
Benton, MS 39039
Telephone: (662) 673-0091
Facsimile: (662) 673-0091
Email: jdb@farmandranchlaw.com

Daniel M. Cohen*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202)789-1813
Danielc@cuneolaw.com

David S. Muraskin*
**PUBLIC JUSTICE, PC**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 861-5245
Facsimile: (202) 232-7203
Email: dmuraskin@publicjustice.net

Kellie Lerner*
Meegan F. Hollywood
Benjamin Steinberg*
**ROBINS KAPLAN, LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
Email: KLerner@RobinsKaplan.com
Email: MHollywood@RobinsKaplan.com
Email: bsteinberg@robinskaplan.com

M. Stephen Dampier*
**DAMPIER LAW FIRM**
55 North Section Street
P.O. Box 161
Fairhope, AL 36532
Telephone: (251) 929-0900
Facsimile: (251) 929-0800

26

Email: stevedampier@dampierlaw.com

Michael L. Silverman*
ROACH LANGSTON BRUNO LLP
205 North Michigan Avenue, Suite 810
Chicago, IL 60601
Telephone: (773) 969-6160
Email: msilverman@rlbfirm.com

Grant L. Davis*
Thomas C. Jones*
Timothy Gaarder*
Thomas E. Ruzicka, Jr.*
DAVIS BETHUNE & JONES, LLC
1100 Main St, Ste 2930
Kansas City, MO 64105
Telephone: (816) 421-1600
Email: gdavis@dbjlaw.net
Email: tgaarder@dbjlaw.net
Email: tjones@dbjlaw.net
Email: truzicka@dbjlaw.net

Robert Bonsignore, Esq.*
BONSIGNORE, TRIAL LAWYERS, PLLC
23 Forest St
Medford, MA 02155
Telephone: (781) 350-0000
Email: rbonsignore@class-actions.us

*Additional Class Counsel for Plaintiffs and
the Proposed Class*

* admitted *pro hac vice*

27

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2022, I electronically transmitted a true and correct

copy of the foregoing document to the Clerk of Court for filing using the CM/ECF system,

which will send notification of such filing to all counsel of record.

*/s/ Gary I. Smith, Jr.*
Gary I. Smith, Jr.
